**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-242-RMR-STV

NICOLAS ORLIN;
SHAWN MURPHY

       Plaintiffs,
v.

THE CITY AND COUNTY OF DENVER, a Colorado municipal corporation;
DOES 1-20, in their individual capacities and whose names are unknown;
THE CITY OF AURORA, a Colorado municipal corporation

       Defendants.

---

**CITY OF AURORA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [ECF 25-2]**

---

The City of Aurora ("Aurora"), by and through its counsel, respectfully submits this Motion to Dismiss Plaintiffs' First Amended Complaint [ECF 25-2], and as grounds therefor states as follows:

## I.    INTRODUCTION

Plaintiffs' Amended Complaint and Jury Demand [ECF 25-2] contains five claims for relief: two claims against the unnamed Doe individual officers alleging unlawful seizure and excessive force, one claim against Defendant City and County of Denver alleging municipal liability, and finally one claim against Defendant City of Aurora ("Aurora") alleging municipal liability. Plaintiffs further allege Aurora has failed to adequately its train officers. Plaintiffs have failed to allege facts sufficient to support their claim against Aurora and thus it should be dismissed under Rule 12(b).

## II.     LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim, the Court will "accept as true all well-pleaded factual allegations in the amended complaint." *County of Santa Fe v. Public Serv. Co.*, 311 F.3d 1031, 1034 (10th Cir. 2002) (internal quotations omitted). Factual allegations are "viewed in the light most favorable to the nonmoving party." *Id*. A motion for failure to state a claim "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 1034-35. The Court's function is to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id*. at 1035.

The court should first identify the allegations in the complaint that are legal conclusion, bare assertions, or merely conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Next, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Waller v. City and County of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). The Court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.*

## III.     ARGUMENT

Plaintiffs have failed to allege facts sufficient to support their claim against Aurora. As an initial matter, Plaintiffs fail to allege sufficient facts to determine whether an Aurora officer is even involved in the incidents in question. However, even assuming such facts were alleged, the Amended Complaint does not contain sufficient factual allegations to support claims for municipal

liability. Thus, the claim against Aurora should be dismissed for failure to state a claim upon which relief may be granted.

### A. The claim against Aurora should be dismissed because Plaintiffs have not alleged an underlying constitutional violation by an Aurora officer.

A municipality cannot be held liable for constitutional violations when there is no underlying constitutional violation by any of its officers. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). "Absent a showing of constitutional injury, a municipality cannot be liable for damages, regardless of the existence of a policy or custom." *Holmes v. Town of Silver City*, 826 Fed.Appx. 678, 678 (10th Cir. 2020). A claim for municipal liability is "fatally infirm" without an "underlying constitutional violation." *Scott v. City of Albuquerque*, 711 Fed.Appx. 871, 882 n. 10 (10th Cir. 2017). "An official capacity claim under § 1983 is the same as a claim against a municipality and also requires an underlying constitutional injury." [1] *Rowell v. Bd. of County Comm'rs*, 2020 WL 627907, *7 (10th Cir. 2020).

Here, the Amended Complaint does not allege facts to overcome the threshold issue of a constitutional violation by an individual officer from Aurora. It is therefore unnecessary to reach the issue of *Monell* liability as there has not been an adequate showing of a constitutional violation by any individual from which municipal liability might stem. The Amended Complaint states that the injury sustained by Plaintiff Murphy was caused by an individual who "may have been an officer of APD." [ECF 25-2, ¶¶ 114, 115, 180]. Such an allegation, without any further supporting facts to indicate that it was in fact an officer employed by Aurora is insufficient to support a claim

---

[1] Claims against officers in their official capacities are merely another way of pleading a claim against the governmental entity itself. *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 690-n. 55 (1978). Naming both is redundant and leads to confusion. *Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1087 (D. Colo. 2010).

against Aurora. The mere possibility that an Aurora officer fired a less lethal weapon that resulted in the alleged injuries to Plaintiff Murphy is not enough. The Amended Complaint must allege more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678. The Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged" and the standard requires "more than a sheer **possibility** that a defendant has acted unlawfully." *Id.* (emphasis added). Here, Plaintiffs by their own phrasing in the Amended Complaint have alleged nothing more than the mere possibility that an unnamed and unidentified Aurora officer was involved in the incident at issue, which is insufficient to sustain a claim against any individual officer, much less to sustain a claim for municipal liability against Aurora. Thus, the claims against Aurora should be dismissed under Rule 12(b)(6).

  B. **The claim against Aurora should be dismissed because the Amended Complaint fails to adequately allege facts to support municipal liability.**

In order to sufficiently allege a viable municipal liability claim, Plaintiffs' Amended Complaint must identify a municipal "policy" or "custom" that caused the alleged injury to Plaintiffs. Because the Amended Complaint draws conclusions unsupported by factual allegations, only makes conclusory allegations as to the policy or custom alleged, relies upon post-incident assessments of policy unrelated to the facts of the present matter, and fails to adequately allege deliberate indifference, this Court should dismiss the *Monell* claims against Aurora. *See Erikson v. Pawnee County Bd. of County Com'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001).

There is no *respondeat superior* liability under Section 1983. *Board of the County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). To establish *Monell* liability, a plaintiff must show "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Id*. A plaintiff must also show that "the policy

4

was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

The Tenth Circuit has set forth five forms of municipal policies or customs. First, a policy or custom may be a "formal regulation or policy statement." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)). Next, it may take the form of "an informal custom 'amount[ing] to' a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id*. It may also take the form of "decisions of employees with final policymaking authority" or "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Id*. Finally, it may take the form of a "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Id*.

After adequately alleging a policy or custom behind a constitutional violation, a plaintiff must then demonstrate "a direct causal link between the policy or custom and the injury alleged." *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). A plaintiff must allege facts to show that a municipality's own unconstitutional or illegal policy or custom caused his injury. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). For causation, "the challenged policy or

practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs,* 962 F.3d 1204, 1241 (10th Cir. 2020) (internal citations omitted). "When a policy is facially constitutional, the burden of establishing causation (and culpability) is heavy." *Id.* "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (internal citations omitted).

For claims of inadequate hiring, training or other supervisory practices, a plaintiff must demonstrate that the government's "action was taken with 'deliberate indifference' as to its known or obvious consequences." *Waller,* 932 F.3d at 1284 (citing *Brown*, 520 U.S. at 407). This standard may be satisfied when the entity "had actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Id.* (citing *Barney*, 143 F.3d at 1307).

### 1. Informal Policy, Custom or Practice

A municipality may be held liable if the alleged constitutional violation is "so permanent and well settled as to constitute a custom or usage with the force of law." *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999) (citation omitted). A custom is "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). To establish a custom, the actions of municipal employees must be "continuing, persistent and widespread." *Id.* (citing *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)). A plaintiff must sufficiently allege: "(1) the existence of a continuing, persistent

and widespread practice of unconstitutional misconduct by the [City's] employees; (2) deliberate indifference to or tacit approval of such misconduct by the [City's] policymaking officials . . . after notice to the officials of that particular misconduct; and (3) that the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts." *Gates*, 996 F.2d at 1041. To show the existence of such a custom, a plaintiff "must . . . offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney*, 534 F.3d at 1274.

Here, Plaintiffs do not cite to a single prior incident involving any Aurora officer to support a claim for an informal custom or policy. Plaintiffs make vague, conclusory references to the conclusions contained in a report by the Colorado Attorney General (the "AG's Report"), but cite to no specific findings, conclusions, or incidents from that report to support their conclusion. Furthermore, the AG's Report specifically states that the focus was not on any particular incident and does not specifically analyze the incident involving Plaintiffs, nor do Plaintiffs make such an assertion in the Amended Complaint. The report does not analyze protest situations, much less situations like those faced by the officers on the date of this incident. The report makes no findings related to the use of force in crowd control and crowd management situations, nor does it analyze Aurora's use of less-lethal devices in any similar situations. Simply put, the AG's Report is not relevant to, nor does it claim to apply to, the circumstances surrounding Plaintiffs' claims.

With respect to training, the report did not review training curriculums or content in the training academy used before 2020, nor does Plaintiff even allege that the analysis of training relates to the issues raised in the Amended Complaint. Finally, and most importantly, the conclusions of the AG's Report state categorically that they analyzed use of force under the more

7

restrictive provisions of new Colorado law, not under the constitutional standards that were in effect at the time of this incident. The AG's Report repeatedly stresses that it is seeking to establish a higher standard for Aurora than even what is still legally required. Nothing in the AG's Report establishes an unconstitutional pattern or practice by Aurora at the time of this incident or as it relates to Plaintiffs' claims.

Additionally, Plaintiffs cite to no prior incidents involving any Aurora officers for any purpose. In fact, in direct contrast to the way Plaintiffs plead their municipal liability claims against the City and County of Denver, Plaintiffs identify no incidents involving any Aurora officer in any context, much less in a protest or crowd management situation. As alleged in the Amended Complaint, nothing "suggest[s] that the City had a custom or practice to overlook the conduct of the[] particular officer[]" involved in the underlying incident. *Thomas v. City of Aurora, et. al.*, 2021 WL 5810742, *16 (D. Colo. Dec. 7, 2021). The Amended Complaint makes no allegations that any individual Aurora officers engaged in any similar behavior previously that could have served to put the City on notice of potentially unconstitutional conduct during this protest response.

Finally, the Amended Complaint contains no factual allegations to satisfy the required causation element. Plaintiffs rely purely on conclusory statements to allege that the City was deliberately indifferent but articulate no facts to suggest that there was any actual or constructive notice of any alleged deficiencies or misconduct to the City at the time of this incident. The report by the Attorney General had not been issued at the time of this incident and, therefore, could not possibly have put Aurora on notice of any of its alleged conclusions. Thus, the Amended Complaint lacks sufficient allegations to support a claim for municipal liability on the basis of an informal custom or practice and should be dismissed.

### 2. Failure to Train, Supervise, or Discipline

Plaintiffs have failed to sufficiently allege that Aurora failed to train its officers. In limited circumstances, a municipality may be liable for a failure to train. *City of Canton v. Harris*, 489 U.S. 378 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 131 S.Ct. at 1359; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Thus, a municipality's failure to train its employees may serve as the basis for §1983 liability only where that failure amounts to deliberate indifference to the rights of citizens. *Canton*, 489 U.S. at 388-89. A less stringent standard of fault for a failure-to-train claim "would result in de facto *respondeat superior* liability." *Id.* at 392. Allegations of failure to supervise are assessed under the same standard. *Whitewater v. Goss*, 192 Fed.Appx. 794, 797 (10th Cir. 2006). "Rarely, if ever, is 'the failure of a police department to discipline in a specific instance . . . an adequate basis for municipal liability under *Monell*.'" *Schneider*, 717 F.3d at 777 (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1056 (10th Cir. 1993)).

Deliberate indifference involves an obvious need for more or different training where the inadequacy of training is likely to result in the violation of constitutional rights. *Canton*, 489 U.S. at 390. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program causing constitutional

9

violations." *Connick*, 131 S. Ct. at 1360. Additionally, the identified deficiency must be closely related to the plaintiff's actual injury. *Canton*, 489 U.S. at 385. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91.

Here, the Amended Complaint makes only conclusory allegations regarding the alleged failure to train. The Amended Complaint does not point to any specific deficiency in the City's "overall training," but rather makes conclusory allegations that at best may suggest "shortcomings in individual officers' training and supervision." *Murphy v. City of Tulsa*, 950 F.3d 641, 652 (10th Cir. 2019). Additionally, as discussed above, Plaintiff has alleged no facts to suggest that the City was on notice of any such alleged failures as Plaintiff fails to sufficiently allege a prior pattern of similar violations. The AG's Report cannot possibly have provided such notice because it was authored and released after the incident at issue here.

Plaintiffs do not articulate any "specific facts regarding the officers' training or supervision—for instance, 'how the individual defendants were trained, who they were trained by, why their training was deficient, or what the City's training includes and how it has changed since the alleged pattern began.'" *Thomas*, 2021 WL 5810742 at *19 (quoting *Cook v. Whyde*, No. 20-cv-02912-PAB-STV, 2021 WL 4459051 at *16 (D. Colo. 2021)). Plaintiffs include no factual allegations to substantiate that Aurora was on notice of any alleged training deficiencies and failed to act upon this notice. Plaintiffs have failed to allege any basis upon which to conclude that Aurora acted with deliberate indifference.

If Plaintiffs' *Monell* claim is based on the single-incident theory of liability, it also fails legally and factually. The single-incident class of cases is exceedingly narrow, and liability will

be found only where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *See Barney*, 143 F.3d at 1307-08 (citing *Brown*, 117 S.Ct. at 1391).

"As a general matter, the Supreme Court has cautioned specifically against judicial micro-management in this area." *Estate of Bleck v. City of Alamosa*, 105 F. Supp. 3d 1222, 1231, 2015 U.S. Dist. LEXIS 62791, *16. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id*., * 16, *citing City of Canton*, 109 S. Ct. at 1206. "The Supreme Court has made clear that the single-incident exception is premised on officers' "utter lack of an ability to cope with constitutional situations," and thus "is concerned with the substance of the training, not the particular instructional format." *Id.*, *16-17, citing *Connick*, 131 S. Ct. at 1363. It therefore is only when officers "have no knowledge at all of the constitutional limits on the use of [] force" that the exception is potentially viable. *Id., *17, citing Connick*, 131 S. Ct. at 1363.

Here, Plaintiffs do not allege that Aurora officers were not trained as to constitutional parameters of the Fourth Amendment or the use of less-lethal munitions at all. Likewise, Plaintiffs do not allege, and cannot plausibly allege, that the City has no training as to the Constitutional limits of the use of force and/or general parameters of the Fourth Amendment or provided no training to its officers as to the use of less-lethal devices. Plaintiffs make only conclusory allegations regarding the failure to train, without pointing to any specific factual allegations or

alleged deficiencies in the training program. Without any factual allegations or specificity, Plaintiffs' claims cannot proceed. Therefore, Plaintiffs' Amended Complaint fails to allege facts sufficient to support a claim for municipal liability on the basis of a failure to train and the claim should be dismissed for failure to state a claim upon which relief may be granted.

### 3. Ratification

Municipal liability may be based on the ratification by "final policymakers of the decisions- and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval." *Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1339-40 (D.N.M. 2013) (quoting *Brammer-Hoelter*, 602 F.3d at 1189). A final policymaker is someone "whose acts or edicts may fairly be said to represent official policy." *Id*. (citing *Monell*, 436 U.S. at 694). "[T]he fact that [an official] simply went along with a subordinate's discretionary decisions, without having investigated the basis for those decisions, does not constitute a delegation of the official's policymaking authority to the subordinate." *Praprotnik v. City of St. Louis*, 879 F.2d 1573, 1574 (8th Cir. 1989) (internal citation omitted). "An official is not a policymaker simply because he has discretionary authority to carry out functions authorized by a municipal policy." *Dempsey v. City of Baldwin City*, 333 F.Supp.2d 1055, 1070 (D. Kan. 2004). An "official whose actions can be reviewed by other policymakers or who is constrained by the policies of others does not have final policymaking authority." *Id.* at 1071. "Plaintiffs must allege and prove that the final policymaker affirmatively approved a subordinate's decision *and the basis for it*." *Id.* (emphasis in original). Furthermore, "there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, 2010 WL

3911457, *2, (S.D. Cal. 2010) (quoting *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Hawaii 2003)). A "mere failure to overrule a subordinate's actions, without more, is insufficient." *Id.* (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)).

In the Amended Complaint, Plaintiffs allege in conclusory fashion that the City has ratified past misconduct. However, the Amended Complaint alleges no facts to suggest that any final policy makers whose actions are not subject to review by others reviewed any of the conduct at issue in this case. Further, Plaintiff does not allege that any policymaker ratified the basis for the decisions made by the Aurora officers. Plaintiffs conclude, without supporting facts, that officers were not disciplined and therefore their conduct was ratified. However, such a bare conclusion is insufficient. Plaintiffs do not allege that the incidents in which they alleged they were injured even involved Aurora officers, much less that those specific incidents were reviewed and approved by a policymaker. Thus, Plaintiff has failed to establish municipal liability under a theory of ratification.

### IV. CONCLUSION

Plaintiffs' Amended Complaint fails to allege facts sufficient to support a claim for municipal liability under any theory. Plaintiffs fail to identify or sufficiently allege the involvement of any Aurora officer. Further, Plaintiffs make only conclusory allegations, unsupported by any factual averments. Plaintiffs point to no pattern or practice of conduct and allege no specific failures in the training and supervision programs maintained by Aurora. Without any factual allegations to support legal conclusions, the Amended Complaint is deficient as to the allegations of municipal liability. Therefore, Plaintiffs' claims against Aurora should be dismissed for failure to state a claim upon which relief may be granted.

Respectfully submitted this 25th day of July, 2022.

OFFICE OF THE CITY ATTORNEY

s/ *Isabelle Sabra Evans*
Isabelle Sabra Evans
Peter Ruben Morales
Aurora Municipal Center, Suite 5300
15151 East Alameda Parkway
Aurora, Colorado 80012
Telephone: (303) 739-7030
E-mail: ievans@auroragov.org
        pmorales@auroragov.og
*ATTORNEYS FOR DEFENDANT CITY OF AURORA*

### CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2022, I electronically filed the foregoing *CITY OF AURORA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Stephen B. Baumgartner
Sean Simeson
birk@baumgartnerlaw.com
sean@baumgartnerlaw.com
*Counsel for Plaintiffs*

Clifford L. Beem
Danielle C. Beem
A. Mark Isley
clbeem@beemlaw.net
dcbeem@beemlaw.net
amisley@beemlaw.net
*Counsel for Plaintiffs*

Sara L. Cook
Gordon L. Vaughn
scook@vaughandemuro.com
gvaughan@vaughandemuro.com
*Counsel for Defendant City and County of Denver*

s/ *Joanne Flaherty*
Joanne Flaherty