IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00242-WPJ[1]

NICHOLAS ORLIN;
SHAWN MURPHY

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, a Colorado municipal corporation;
DOES 1-20, in their individual capacities and whose names are unknown;
THE CITY OF AURORA, a Colorado municipal corporation,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND DENYING DEFENDANT CITY OF AURORA'S MOTION TO DISMISS AS MOOT**

**THIS MATTER** is before the Court on Defendant City of Aurora's Motion to Dismiss Plaintiffs' First Amended Complaint and Plaintiffs' Motion for Leave to File Second Amended Complaint. Having reviewed the parties' briefs and the applicable law, the Court **GRANTS** Plaintiffs' Motion to Amend (**ECF 58**) and **DENIES** Defendant Aurora's Motion to Dismiss (**ECF 34**) as moot and without prejudice.

### FACTUAL BACKGROUND

Plaintiffs—Mr. Orlin and Mr. Murphy—both attended an allegedly peaceful protest near the Denver State Capitol Building. Both Plaintiffs allege being shot in the face with a rubber bullet

---

[1] Chief United States District Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the District of Colorado.

1

or similar hard projectile by police officers using 40mm launchers. Plaintiffs allege they were shot after Mr. Orlin attempted to cover and Mr. Murphy kicked away tear gas canisters thrown into the crowd by police officers. Plaintiffs allege Denver and Aurora police officers were present at the protests in riot gear. According to Plaintiffs, the Aurora police officers were invited by the City and County of Denver. Plaintiffs bring claims under 42 U.S.C. § 1983 against Defendants Denver and Aurora as well as individual unnamed officers for violating their First, Fourth, and Fourteenth Amendment Rights. Plaintiffs also bring municipal liability claims against Defendants Denver and Aurora based on alleged unconstitutional policies, customs, and practices; failure to train, and ratification of officers' unconstitutional conduct. The constitutional violations giving rise to this lawsuit are alleged to have occurred on March 30, 2020.

## PROCEDURAL BACKGROUND

On January 27, 2022, Plaintiffs filed their initial Complaint against the City and County of Denver and Does 1-5, in their individual capacities and whose names are unknown. On May 27, 2022, Plaintiffs filed an unopposed motion to amend their Complaint and add the City of Aurora as a Defendant. Three days later, on May 30, 2022, the two-year statute of limitations ran.

Denver filed an Answer to the initial Complaint and the First Amended Complaint. Aurora requested and was granted an extension of time to file an answer or respond to Plaintiffs' First Amended Complaint. On July 25, 2022, Aurora filed a Motion to Dismiss in lieu of filing an answer. Aurora moved to dismiss Plaintiffs' claims on two grounds: (1) Plaintiffs failed to allege more than a possibility the unnamed officers were Aurora police officers; and (2) Plaintiffs failed to adequately allege facts to support a municipal liability claim against Aurora. On August 12, 2022, Plaintiffs filed an unopposed motion for extension of time to file a response to Aurora's Motion to Dismiss on the basis that Plaintiffs were waiting for Denver to respond to written

discovery requests about the Aurora police officer Denver claimed was involved in Plaintiff Murphy's incident. On August 16, 2022, Plaintiffs received initial disclosures from Aurora—which included 199 police officer body camera videos. According to Plaintiffs, the videos were disclosed to them "without any indication of organization, categorization or relevance" and Plaintiffs' counsel was forced to "spend unreasonable hours reviewing irrelevant video for almost a month." **ECF 58 at 10**. Based on this initial disclosure, Plaintiffs' counsel was able to locate videos of Plaintiffs being shot by Aurora's Sgt. Matthew Brukbacher and Officer Cory Budaj, respectively. *Id.*

On or about September 23, 2022, Plaintiffs received written discovery responses from Denver, which included an internal affairs report detailing Denver Internal Affairs Sgt. Castillo's investigation of the use of force against Plaintiff Murphy. The report explains that on February 3, 2021, Sgt. Castillo became aware of body camera footage from the Aurora Police Department that might be related to his investigation. The report goes on to detail the contents of Sgt. Brukbacher's body camera footage, including identifying Sgt. Brukbacher as the officer who deployed a 40mm launcher in the direction of Plaintiff Murphy. **ECF 58-6**.

Based on the information obtained from Aurora's initial disclosure and Denver's responses to written discovery, Plaintiffs responded to Aurora's Motion to Dismiss by seeking leave to amend their complaint a second time to add as individual defendants the two Aurora police officers—Sgt. Brukbacher and Officer Budaj—and to add more factual allegations to support their municipal liability claims. **ECF 57**. Plaintiffs also filed a separate motion for leave to amend, to which they attached a proposed second amended complaint. **ECF 58**. Denver does not oppose Plaintiffs' request to add Sgt. Brukbacher and Officer Budaj as Defendants. **ECF 64.**

Aurora opposes Plaintiffs' request to file a second amended complaint. Aurora makes two arguments against granting Plaintiffs leave to amend: (1) Plaintiffs should not be permitted to add individual defendants after the statute of limitations has already run; and (2) amendment would be futile because Plaintiffs' proposed second amended complaint still fails to allege sufficient facts to support a municipal liability claim against Aurora. **ECF 69**. The Court is not persuaded. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Leave to File a Second Amended Complaint and **DENIES** Aurora's Motion to Dismiss as moot and without prejudice.

## DISCUSSION

**I.     Plaintiffs May Add Sgt. Brukbacher and Officer Budaj as Defendants in this Case.**

Plaintiffs first request leave to add Sgt. Brukbacher and Officer Budaj as individual defendants. Both Plaintiffs and Aurora agree the statute of limitations ran on May 30, 2022. Nevertheless, Plaintiffs contend the Court should allow them to add the two individual Aurora police officers under either the doctrine of equitable tolling or under Federal Rule of Civil Procedure 15(c)(1)(C). Because the Court finds the statute of limitations should be equitably tolled, the Court need not address whether the proposed amendment relates back under Rule 15(c)(1)(C).

If a party seeks to amend its pleading more than once, the party may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014). "The decision whether to grant a motion to amend the pleadings to add an additional party is generally left to the sound discretion of the district court." *Schepp v. Fremont Cnty., Wyo.*, 900 F.2d 1448, 1451 (10th Cir. 1990).

Here, Defendant Aurora has raised a statute of limitations defense. For the purposes of Plaintiffs' Section-1983 claims, the forum state's law "determines the appropriate statute of limitations and accompanying tolling provisions." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). The forum state is Colorado, where a two-year statute of limitations applies. Colo. Rev. Stat. § 13-80-102(1)(g).

Colorado law also permits the equitable tolling of statutes of limitation. "The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility." *Garrett v. Arrowhead Imp. Ass'n*, 826 P.2d 850, 855 (Colo. 1992). In adopting equitable tolling, the Colorado Supreme Court has rejected a mechanistic application of statute of limitations:

> Should a court apply the statute of limitations rigidly in all circumstances, rather than promoting justice, the statute of limitations would then become an effective instrument for injustice. When this situation occurs, trial courts properly may . . . fashion an equitable exception to the statutory limitation period.

*Id.* at 854 (citation omitted). "[T]he application of equitable doctrines rests in the sound discretion of the district court." *United States v. Clymore*, 245 F.3d 1195, 1198 (10th Cir. 2001).

The Colorado Supreme Court has applied equitable tolling in the past "when plaintiffs did not timely file their claims because of 'extraordinary circumstances' or because defendants' wrongful conduct prevented them from doing so." *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004); *see also Garrett*, 826 P.2d at 855 ("Equity will toll a statute of limitations if a party fails to disclose information that he is legally required to reveal and the other party is prejudiced thereby."). To determine whether equitable tolling is appropriate, the Court must inquire "into the particular circumstances of the case." *Garrett*, 826 P.2d at 855.

Plaintiffs contend equitable tolling should apply because Denver and Aurora wrongfully failed to disclose Sgt. Brukbacher's and Officer Budaj's identities to Plaintiffs despite two public

records requests made long before the statute of limitations expired. The Court agrees and grants Plaintiffs leave to add Sgt. Brukbacher and Officer Budaj as named defendants.

On May 30, 2020, Mr. Murphy and Mr. Orlin were allegedly shot in the face with hard projectiles by police officers during a peaceful protest. Less than two months later, Plaintiffs' counsel requested public records from Denver under Colorado's Open Records Act and Criminal Justice Records Act. **ECF 58-1**. Although the request was made on Mr. Murphy's behalf, the request was not limited to information about Mr. Murphy's incident. Plaintiffs' counsel requested the following:

> **(1)** All reports, notes, body-camera footage, 911 calls, witness statements and any other video, audio or document from police officers regarding the use of non-lethal force (i.e., pepper ball shootings, paint ball shootings, rubber bullet shootings, gas canister and flash bang deployments) assigned to enforcement operations regarding the public protests occurring on May 30, 2020.
>
> **(2)** All reports, notes, body-camera footage, 911 calls, witness statements and any other video, audio or documentation from police officers regarding the use of non-lethal force (i.e., pepper ball shootings, paint ball shootings, rubber bullet shootings, gas canister and flash bang deployments) assigned to enforcement operations regarding the public protests occurring between May 30, 2020 and June 5, 2020.
>
> **(3)** A list of all police officer names and badge numbers deployed to assist in crowd control regarding the protests occurring on May 30, 2020 in Denver, CO. Furthermore, we are requesting all information regarding which unit each officer is assigned to and if they were assigned to or rode on a police vehicle and all identifying information for the vehicles deployed on May 30, 2020 to assist with policing public protests."

*Id.*

A month later—on August 26, 2020—Denver denied this public records request on the basis that the requested records were at the time "a part of an open Internal Affairs investigation which will be reviewed by the Denver District Attorney" and Denver "believe[d] it would be contrary to the public interest to provide records and evidence from an investigation and review

by the Denver District Attorney." **ECF 58-2**. On November 23, 2020, Plaintiffs' counsel delivered a notice of claim to Denver Mayor's office, Denver City Council, and the Denver City Attorney's office, detailing the location and time of Mr. Orlin's injuries. **ECF 58-7**. Mr. Orlin's claim was forwarded to Denver's Office of the Independent Monitor. *Id.*

Nearly a year passed before Plaintiffs' counsel were notified of three key pieces of information by the Denver Police Department Internal Affairs Bureau Commander: (1) "[t]he incident with Mr. Murphy appear[ed] to involve . . . an Aurora police officer"; (2) "[t]he District Attorney's Office declined to file criminal charges on any police officer;" and (3) Denver's "investigatory file was forwarded to the Aurora Police Department for their administrative review." **ECF 58-3**, **-4**. In light of this new information, Plaintiffs' counsel made a second public records request on behalf of Mr. Murphy on August 11, 2021, in which Plaintiffs' counsel requested the same information—but this time from the Aurora Police Department. **ECF 58-4**. According to Plaintiffs, Aurora never responded, and Aurora does not contend otherwise.

Plaintiffs were only recently able to discover Sgt. Brukbacher's identity from Denver's responses to written discovery, provided to Plaintiffs four months after the statute of limitations had run. Denver's discovery response makes clear that both Denver and Aurora knew Sgt. Brukbacher was involved in Plaintiff Murphy's incident long before the statute of limitations had run. Denver produced an internal affairs report authored by Denver Internal Affairs Sgt. Castillo, which stated in relevant part:

> On 02/03/21 Sgt. Castillo became aware of BWC from Aurora that may be related. The BWC from Aurora was located in IA case P2020-0135. The following BWC was reviewed from Aurora staff: Cmndr Redfearn, Lt Carlson, Sgt. Tisdale, Sgt. Brukbacher, Officer'sWinters,Wikendorf, Vance, Sawyer, Runyon, Rosenblatt, Ramirez, Pickett and Manley. Sgt Brukbacher's BWC captures the incident at 19:45:45 and appears to be at the S/E corner of Colfax / Lincoln. Murphy is seen kicking a can of smoking gas (unknown what kind), back towards the line of police officers. Sgt. Brukbacher is holding a 40mm launcher and deploys it towards the

7

>
> direction of Murphy but the 40mm blocks the view. An unidentified Aurora officer to the right of Sgt. Bruckbacher says to watch out for the white male with black gloves that is walking uphill in lane 3 and Bruckbacher says "I hit him once already" and the other officer says "he's the one kicking it back" and Bruckbacher says "yeah". None of the other Aurora BWC shows the incident. This incident appears to involve Aurora PD staff in the use of force against Mr. Murphy.

**ECF 58-6**. Thus, it appears Denver and Aurora were aware Sgt. Brukbacher was involved in Mr. Murphy's incident well over a year before the statute of limitations expired; yet Denver and Aurora refused to provide Mr. Murphy with any information despite two public records requests.

Plaintiffs were also able to discover the identity of Officer Budaj—who is alleged to have shot Mr. Orlin—only after the statute of limitations ran. Aurora contends that even if the Court were to permit Plaintiffs to add Sgt. Brukbacher as a defendant, it should not add Officer Budaj because while "Plaintiffs did submit a records request for information related to Sgt. Brukbacher, they did no such submission for information to Aurora related to Officer Budaj." **ECF 69 at 7**. The Court is not persuaded. Although the public records request to Aurora was made by Plaintiffs' counsel in the name of Plaintiff Murphy, the information requested was not limited—as Aurora wrongly contends—to "information related to Sgt. Brukbacher." *Id.* **at 9**. Rather, if Aurora had provided "[a]ll . . . body-camera footage . . . from police officers regarding the use of non-lethal force (i.e., pepper ball shootings, paint ball shootings, rubber bullet shootings, gas canister and flash bang deployments) assigned to enforcement operations regarding the public protests occurring on May 30, 2020" to Plaintiffs' counsel, as requested, then Plaintiffs' counsel would have had the opportunity to discover not only the identity of Sgt. Brukbacher but also of Officer Budaj. This eventuality seems particularly likely given that Plaintiffs' counsel was able to discover the identities of both officers once Aurora provided them with the 199 body camera videos.

Furthermore, the nature of the incident and the lopsided control of essential evidence favors equitably tolling the statute of limitations to allow the addition of Officer Budaj as a named

defendant. The nature of the alleged incident is such that it would be difficult—if not impossible—for the Plaintiffs in this case to discover the identities of the officers who shot them absent production of public records by Denver or Aurora.[2] Plaintiffs allege the police officers who shot them "were in a group," **ECF 37, ¶ 44**, and "outfitted in protective riot gear," *id.* ¶ 53. Next, Plaintiffs allege the officers shot Plaintiffs in their respective eyes without first giving any commands or warnings and without making any direct contact with the Plaintiffs. *Id.* **¶¶ 25, 32, 44**. According to the Complaint, Plaintiffs had no direct contact with the officers who shot them before or after the incident—the officers neither arrested nor took Plaintiffs into custody. Moreover, the nature of the incident did not make it possible for Plaintiffs to investigate the identities of the officers who shot them at the time of the incident: "The physical force and trauma of the projectile not only knocked Plaintiff Orlin to the ground and rendered him unconscious, but it also severely injured his eye and surrounding face," *id.* ¶ 26, and "Plaintiff Murphy experienced immediate, excruciating pain, was shocked, stunned, terrified, and rendered immobile as blood drained and flesh hung from his left eye and face, resulting in immediate blindness in his left eye," *id.* ¶ 34. Both Plaintiffs were allegedly transported to a local hospital following the incident. *Id.* **¶¶ 29, 35**. Moreover, Plaintiffs allege the police had thrown tear gas canisters into the crowd of protesters right before Plaintiff Orlin was struck in the face and that at the time he was struck Plaintiff Orlin was trying "to place a traffic cone over the tear gas canister to reduce the amount of noxious chemicals that already filled [the] air." *Id.* **¶¶ 24, 25**. Thus, the nature of the incident also supports equitable tolling of the statute of limitations.

---

[2] The Court relies on the allegations contained in Plaintiffs' First Amended Complaint, which is the operative complaint for this analysis.

Aurora makes several arguments against tolling the statute of limitations. None are availing. First, Aurora appears to contend equitable tolling would be improper because the individual defendants themselves did not "fail[] to disclose information that they were legally required to provide to Plaintiffs," **ECF 69 at 4**, nor did they have "a personal duty to ensure that the entity [i.e., Denver and Aurora] provide[d] information through open records requests or could be alleged to even have known about such requests," *id.* **at 5**. The Colorado Supreme Court has not applied equitable tolling so narrowly. *See Garrett*, 826 P.2d at 855 (holding a statute of limitations can be tolled when "***a*** party fails to disclose information that he is legally required to reveal.") (emphasis added). Rather, "[t]he principle underlying equitable tolling . . . is that a person should not be permitted to benefit from his or her own wrongdoing." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096-97 (Colo. 1996).

Aurora would have the Court turn a blind eye to the realities of Section-1983 litigation and reward municipalities for refusing to respond to public records requests during the statute-of-limitations period. As Plaintiffs point out, in Colorado municipal bodies are in many cases statutorily required to indemnify their officers for Section-1983 liability. Colo. Rev. Stat. Ann. § 29-5-111(1) (West). Moreover, municipal liability—as Aurora points out in its Motion to Dismiss—may hinge on Plaintiffs' ability to prove an underlying constitutional violation by an identifiable individual officer. **ECF 34 at 3**. Accordingly, Aurora has a strong incentive to not disclose the identity of individual officers until after the statute of limitations has run. Aurora's attempt to treat the individual officers as wholly separate from Aurora to support its statute of limitation defense is not well taken.

Moreover, the Court is not impressed with Aurora's contention that equitable tolling should not be applied because Aurora did not wrongfully withhold information from Plaintiffs because

Colorado's Criminal Justice Records Act contains no statutory time limit within which public records requests must be answered. Plaintiffs' counsel filed a public records request with Aurora on August 11, 2021—over nine months before the statute of limitations ran. The Court understands that these public records requests often take considerable time for a municipality to sort through video files and records to respond. That said, the Court will not penalize a plaintiff for the time a municipality takes to respond to a public records request by rigidly applying the statute of limitations. Moreover, the Court notes that Aurora has not provided the Court with any evidence that it ever responded to Plaintiffs' public records request; therefore, Aurora's argument that "the amount of time between Plaintiffs' requests and the production of the records is neither suspicious nor unreasonable" is misleading. **ECF 69 at 9**. Aurora—once added as a party—provided Plaintiffs with initial disclosures, which included 199 body camera videos. Based on this disclosure, Plaintiffs were able to discover the body camera videos of both Sgt. Brukbacher and Officer Budaj. While the Court appreciates that Aurora abided by the initial disclosure requirement, doing so does not take the place of responding to a public records request.

Given the nature of the alleged incident and Plaintiffs' counsel's diligent public records requests, the Court has no difficulty concluding the statute of limitations should be equitably tolled and leave should be freely granted for Plaintiffs to add Sgt. Brukbacher and Officer Budaj.

**II.     Plaintiffs' Municipal Liability Claim Against Aurora Is Not Futile.**

Plaintiffs attached a proposed second amended complaint to their motion to amend. **ECF 58-10**. In their proposed second amended complaint, Plaintiffs included additional factual allegations to support their municipal liability claim against Aurora. Aurora contends the Court should deny Plaintiffs leave to add more factual allegations to their complaint. According to Aurora, this amendment is futile because Plaintiffs' proposed complaint still fails to allege a

plausible municipal liability claim against Aurora. The Court disagrees and, accordingly, grants Plaintiffs leave to file their proposed second amended complaint as drafted.

As previously discussed, whether to grant leave to amend is left up to the discretion of the district court, and under Rule 15(a)(2), a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, "a district court may withhold leave to amend if the amendment would be futile." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). Here, Aurora appears to contend Plaintiffs' proposed amendment would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) because it fails to allege facts to support a municipal liability claim against Aurora.

Under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). To avoid dismissal under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court assesses Plaintiffs' allegations "in the context of the entire complaint" to determine whether Plaintiffs have nudged their claim "across the line from conceivable to plausible." *Chilcoat*, 41 F.4th at 1218 (internal citations omitted). Under Rule 12(b)(6), "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

recovery is very remote and unlikely.'" *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556).

Plaintiffs bring municipal liability claims under Section 1983 against Aurora for unconstitutional policies, customs, and practices; failure to train; and ratification of officers' unconstitutional conduct. **ECF 58-10 at 56-58**. Aurora argues Plaintiffs fail to allege facts to support a municipal liability claim against it. The Court disagrees. Plaintiffs have sufficiently alleged a municipal liability claim against Aurora; thus, amendment is not futile.

### A. Plaintiffs Sufficiently Allege a Municipal Policy or Custom.

A municipality can be held liable under Section 1983 when the alleged constitutional violation is caused by a municipality's policies or customs. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). To state a claim against Aurora, "the plaintiffs must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1034 (10th Cir. 2020). An official municipal policy or custom can take the following forms:

(1) a formal regulation or policy statement;

(2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;

(3) the decisions of employees with final policymaking authority;

(4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or

(5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted). At this early stage in the case, Plaintiffs have sufficiently alleged that Aurora had deficient or nonexistent

13

policies on use-of-force, crowd management, and use of less-lethal munitions; that Aurora had a custom of using excessive force; that Aurora instructed its officers to shoot protesters who touched gas canisters with less-lethal munitions; and that Aurora failed to adequately train its officers in crowd management and use of less-lethal munitions. Thus, Plaintiffs sufficiently allege the first required element: a municipal policy or custom.[3]

First, Plaintiffs sufficiently allege deficient policies as well as the lack of policies. According to Plaintiffs, Aurora's use of force policies, including its policy on use of "less-lethal" munitions is too brief and lacks sufficient detail about the circumstances under which force and less-lethal munitions can be used against civilians. **ECF. 58-10, ¶¶ 148-49, 151-52**. Plaintiffs further allege that Aurora "failed to adopt policies on the circumstances under which specific 'less-lethal' weapons, such as 40mm launchers, . . . can be used against civilians." *Id.* ¶ **146**. And Plaintiffs allege Aurora "has no policy whatsoever on crowd management." *Id.* ¶ **147**. Finally, the proposed amended complaint contains allegations that Aurora does not require officers to give verbal warnings when using less-lethal shotguns or 40mm launchers. *Id.* ¶ **155**.

Next, Plaintiffs have sufficiently alleged a custom of using excessive force. A "custom is a practice that is so 'continuing, persistent, and widespread' that it has 'the force of law.'" *Jensen v. W. Jordan City*, 968 F.3d 1187, 1204 (10th Cir. 2020) (citation omitted). "Custom can be established by 'a series of decisions by a subordinate official . . . of which the supervisor must have been aware.'" *Id.* (citation omitted). Plaintiffs allege sufficient facts to support the reasonable inference that Aurora officers have a "continuing, persistent, and widespread" custom of using excessive force. Plaintiffs allege numerous prior incidents and examples of Aurora officers using

---

[3] The operative facts for the futility analysis come from Plaintiffs' proposed second amended complaint. **ECF 58-10**.

unnecessary, disproportionate, and excessive force against civilians. **ECF. 58-10, ¶ 161-62**. At this stage in the proceedings, these allegations are sufficient to plausibly allege a municipal custom of excessive force.

Further, Plaintiffs sufficiently allege Aurora instructed its officers to deploy impact munitions at protesters who made contact with gas canisters. Plaintiffs allege that "Defendant Brukbacher authored a report stating that on May 30, 2020, officers of the Aurora ERT who were deployed to the area of Civic Center Park, State Capitol Building, and Colfax and Lincoln, were instructed to deploy their impact munitions and/or bean bag munitions at protesters who contacted gas canisters." *Id.* ¶ 47. Further, Plaintiffs allege, "Consistent with the instructions to shoot protesters who contact gas canisters, Defendant Brukbacher fire[d] his 40mm launcher in the direction of Plaintiff Murphy." *Id.* ¶ 49. Finally, Plaintiffs allege Aurora officers were to follow Aurora's own "policies, practices, and/or customs regarding the use of less-lethal weapons and use of force during the protests," *id.* ¶12, and that "Denver provided no guidance to Aurora officers on when less lethal munitions should be used," *id.* ¶ 63. Accordingly, viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs have sufficiently alleged that Aurora instructed its officers to deploy impact munitions at protesters who contacted gas canisters, which could qualify as a municipal policy.

Finally, Plaintiffs allege sufficient facts to support a claim for failure to adequately train Aurora officers in crowd management and use of less-lethal weapons, such as the 40mm launchers allegedly used on Plaintiffs. Plaintiffs allege Aurora's training was "outdated, insufficient, and inconsistent with generally accepted standards and practices" in that it "inordinately focused on crowd control" and employed a "munitions intensive system." **ECF 58-10, ¶¶ 139, 143**. Plaintiffs allege that Aurora failed to train its officers in "more effective crowd management and policing

strategies that enhance group/crowd compliance, minimize defiance, and reduce the likelihood of conflict and violence." *Id.* ¶ **142**. And Plaintiffs allege these more effective crowd management tactics came out of studies on past large-scale protests, such as the "Occupy" protests in 2011. *Id.* Further, Plaintiffs allege, "Defendant Aurora had knowledge of the importance of training on the proper use of 'less-lethal' weapons," and yet failed to administer proper training. *Id.* ¶ **139**.

At this stage of the case, viewing Plaintiffs' allegations in the light most favorable to them, the Court finds the proposed second amended complaint alleges sufficient facts to support a plausible failure-to-train claim. *See Dias*, 567 F.3d at 1178 (quoting *Twombly*, 550 U.S. at 556) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'").

In sum, Plaintiffs have plausibly alleged multiple municipal policies or customs.

### A. Plaintiffs Sufficiently Allege Causation.

To establish causation for a municipal liability claim, "the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted). Put another way, this requirement is met "if the plaintiff shows that 'the municipality was the moving force behind the injury alleged." *Id.* (citation omitted). Here, Plaintiffs have sufficiently alleged the above-discussed policies or customs were the "moving force" behind Plaintiffs' injuries.

Plaintiffs allege that Mr. Orlin "while posing no threat to anyone . . . was struck suddenly and without any commands or warnings in his left eye with a rubber bullet or similar hard projectile." **ECF 58-10, ¶ 27**. The proposed complaint goes on to specify that Officer Budaj was the one who shot Mr. Orlin and to allege that "[i]t is clear from the video taken of the incident that [Officer] Budaj . . .[was] using force without warning, that far exceeded that which was reasonable

and necessary under the circumstances." *Id.* ¶ **30**. The Plaintiffs also allege that Mr. Murphy was shot suddenly and without warning by Sgt. Brukbacher in the eye when Sgt. Brukbacher "saw Plaintiff Murphy kicking the canister of smoking gas." *Id.* ¶ **34**. Moreover, Plaintiff allege, "Defendant Brukbacher authored a report stating that on May 30, 2020, officers of the Aurora ERT who were deployed to the area of Civic Center Park, State Capitol Building, and Colfax and Lincoln, were instructed to deploy their direct impact munitions and/or bean bag munitions at protesters who contracted gas canisters." *Id.* ¶ **47**. The proposed complaint alleges, "the use of force against the Plaintiffs by Defendants Budaj and Brukbacher, both of whom were officers of the [Aurora Police Department], were consistent with, authorized, and condoned by the constitutionally deficient policies, practices, customs, and lack of sufficient training of Defendant Aurora." *Id.* ¶ **177**. And Plaintiffs repeatedly alleged the Aurora officers invited to assist Denver during the protests—Sgt. Brukbacher and Officer Budaj among them—were to follow Aurora's own "policies, practices, and/or customs regarding the use of less-lethal weapons and use of force during the protests." *Id.* ¶ **12**. Based on these allegations, the Court concludes Plaintiffs sufficiently allege causation.

### B. Plaintiffs Sufficiently Allege Deliberate Indifference.

According to recent Tenth Circuit precedent, plaintiffs are required to establish deliberate indifference under any theory of municipal liability. *See, e.g.*, *Quintana*, 973 F.3d at 1034. Aurora contends Plaintiffs fail to adequately allege Aurora's deliberate indifference. At this early stage in the litigation, the Court finds Plaintiffs' proposed amended complaint contains sufficient allegations to survive Aurora's futility argument.

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional

violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller*, 932 F.3d at 1284 (citation omitted). While deliberate indifference is often established "by proving the existence of a pattern of tortious conduct," it can also be established "in a narrow range of circumstances where a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction." *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1241 (10th Cir. 2020).

Guided by the 12(b)(6) standard, the Court concludes that Plaintiffs have alleged sufficient facts to support the element of deliberate indifference at this stage. First, Plaintiffs allege facts supporting a pattern of excessive force by Aurora officers prior to the protest on May 30, 2020. These prior incidents support the reasonable inference that Aurora had "actual or constructive notice" that its failure to have adequate policies or training on use of force and use of less-lethal munitions and crowd management would be "substantially certain to result in a constitutional violation" if Aurora officers were deployed to assist Denver with the protests in May of 2020. *Waller*, 932 F.3d at 1284. Moreover, accepting the truth of Plaintiffs' allegations, the alleged constitutional violations are "a highly predictable or plainly obvious consequence of" Aurora instructing its ERT officers to deploy their direct impact munitions and/or bean bag munitions at protesters who contacted gas canisters. *Hinkle*, 962 F.3d at 1241.

Plaintiffs' proposed second amended complaint plausibly alleges a municipal liability claim against Aurora and, therefore, is not futile. Accordingly, Plaintiffs' Motion to File a Second Amended Complaint is **GRANTED**. Because the Court grants Plaintiffs leave to amend, the Court **DENIES** Aurora's Motion to Dismiss Plaintiffs' First Amended Complaint as moot and without prejudice. The Court notes that while it denies Aurora's motion to dismiss without prejudice, Aurora may not reraise arguments that Plaintiffs' municipal liability claim is insufficiently pleaded

and/or implausible under Ruler 12(b)(6) because the Court has already addressed the merits of these arguments in its futility analysis.

## CONCLUSION

For the reasons discussed in this memorandum opinion and order, the Court **GRANTS** Plaintiffs' Motion for Leave to File Second Amended Complaint (**ECF 58**) and **DENIES** City of Aurora's Motion to Dismiss Plaintiffs' First Amended Complaint (**ECF 34**) as moot and without prejudice.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
UNITED STATES DISTRICT JUDGE